[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 12, 2008
THOMAS K. KAHN
CLERK

No. 07-13498
Non-Argument Calendar

_____

D. C. Docket No. 05-00845-CV-ODE-1

EDITH N. ENWONWU,

                                                     Plaintiff-Appellant,

versus

THE FULTON-DEKALB HOSPITAL AUTHORITY,
d.b.a. Grady Health System,
GEOFF BROWN,
TOM LINDSEY,
LINDA GARRETT,

                                                     Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 12, 2008)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Edith N. Enwonwu appeals pro se the district court's grant of the Fulton-Dekalb Hospital's ("Hospital") motion for judgment as a matter of law ("JMOL"), pursuant to Fed.R.Civ.P. 50(a), on her claims of race, national origin, and disability discrimination, in violation of the Fourteenth Amendment and 42 U.S.C. § 1981 (brought pursuant to 42 U.S.C. § 1983), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Enwonwu argues on appeal that the district court abused its discretion by denying "practically all" of her pretrial motions. Enwonwu also claims that the district court erred in granting the Hospital's motion for JMOL. For the reasons set forth more fully below, we affirm.

On June 6, 2005, Enwonwu, a black female of Nigerian national origin, filed an amended pro se complaint against her employer, the Hospital, Hospital Vice President Geoff Brown, Hospital Director of Production Services Tom Lindsey, and Hospital Help Desk Supervisor Linda Garrett, under the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, Title VII, and the ADA. Enwonwu charged that: (1) the Hospital subjected her to work under conditions injurious to her health; (2) Enwonwu was disparately denied the use of her earned sick leave;

2

(3) the Hospital disparately subjected Enwonwu to work in the Data Center when similarly situated employees continued to work in the Help Desk office; (4) the Hospital subjected Enwonwu to a hostile work environment by soliciting other employees to fabricate complaints about her; (5) the Hospital required Enwonwu to attend training classes outside of her normal work schedule without paying adequate compensation and, with the intent to discriminate, denied her the opportunity to view the training tapes at the Help Desk office during her work shift; (6) the Hospital disparately denied Enwonwu the opportunity to transfer to Harry Dale's daytime weekend shift; (7) the Hospital denied Enwonwu the opportunity to transfer to the newly created full-time night-shift position; and (8) the Hospital, with the intent to discriminate, wrongfully terminated Enwonwu's employment on December 6, 2004.

In its Scheduling Order, the district court ordered that:

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procure and the Local Rules of this Court.

Enwonwu served more than 25 interrogatories on the Hospital, but the Hospital refused to respond to interrogatory numbers 26 et. seq. Enwonwu filed a

3

motion to compel discovery and for sanctions, and the Hospital filed a motion for a protective order and for denial of Enwonwu's motion.

At the April 13, 2006, hearing on the motions, the district court sustained the Hospital's objection that Enwonwu's request exceeded the 25-interrogatory limit set by Local Rules. The Hospital moved to reopen the discovery period, but the court denied the request. In its written order, the court ordered the Hospital to produce documents that Enwonwu had requested, including the "punch audit" for Dale, a former Help Desk part-time employee, which the Hospital produced on May 10, 2006.

On May 23, 2006, Enwonwu moved for partial summary judgment. The district court dismissed the motion but directed the parties "to confer and to prepare and file a proposed consolidated pretrial order no later than thirty (30) days from the entry of this Order." Both parties filed separate pretrial orders.

Enwonwu later filed a motion for leave to renew her motion for summary judgment and a motion for contempt and for sanctions because Enwonwu claimed that counsel for the Hospital wilfully and deliberately disobeyed the court's order by refusing to stipulate to Enwonwu's exhibits and facts contained in her motion for partial summary judgment. The court denied Enwonwu's motions.

In light of the Hospital's entry of an additional attorney, the district court

granted the Hospital's motion to supplement its pretrial order, and the Hospital filed a supplemental pretrial order. Enwonwu also filed two motions to supplement her pretrial order, which the court granted. The minute text noted that

> Defendants shall provide Plaintiff with photos of the area within 14 days. The Court will bifurcate the trial. Plaintiff shall amend witness list 10 days prior to trial. The Plaintiff may take photos of the area after review of the Defendants' photos if she wishes.

Meanwhile, Enwonwu filed a motion for contempt and for sanctions alleging that counsel for the Hospital failed to ensure that Enwonwu was able to take photographs of the Hospital's eleventh floor.

In its June 20, 2007, pretrial order, the district court found that Enwonwu had filed her amended complaint against Brown, Lindsey, and Garrett in their official capacities. In a separate order, on June 25, 2007, the court generally approved of the parties' proposed supplemental pretrial orders and stated that it would address Enwonwu's outstanding motion for contempt and for sanctions relating to the photographs at trial. However, the court struck paragraph four of Enwonwu's pretrial order.

At trial, the district court asked Enwonwu whether she wanted the jury to hear her evidence, and Enwonwu stated, "I guess if you're not ruling on the summary judgment, I don't know what else you have to rule on." Enwonwu

5

finally replied, "I don't think I will waive my right to a jury trial."

After the jury was selected, Enwonwu asked the district court to adjourn until the following day because she "didn't know about the construction work, so [she] was rushing to find a parking space. With [her] breathing problem [she was] dizzy when [she] breathes too hard." The court denied the request. After both parties gave opening statements, the court admitted several of Enwonwu's documents into evidence. The court deferred ruling on the admission of two of Enwonwu's exhibits, and it sustained the Hospital's objections to the admission of several of Enwonwu's other documents. Enwonwu testified at trial. The Hospital moved for JMOL, and the court granted the motion.

As an initial matter, we decline to consider Enwonwu's arguments that are presented for the first time in her amended reply brief. See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (declining to consider argument raised for the first time in a pro se appellant's reply brief).

I.

A.    25 Interrogatory Limit

According to Enwonwu, both parties stated in their preliminary reports and discovery schedules that the case was complex because it contained an unusually large number of claims and/or defenses. Enwonwu contends that, in her

6

preliminary report and discovery schedule, she requested enlargement of the number of interrogatories to 60 questions, but she claims that the court "disregarded the obvious."

We review a district court's discovery decisions for an abuse of discretion. United States v. R&F Properties of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). Pro se pleadings are entitled to liberal construction. Brown v. Crawford, 906 F.2d 667, 670 (11th Cir.1990). Under an abuse-of-discretion standard, we will not disturb the district court's decision as long as it is within a range of reasonable choices and is not influenced by any mistake of law. Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005).

Rule 33 provides, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed.R.Civ.P. 33(a). Rule 26 states, "[b]y order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36." Fed.R.Civ.P. 26(b)(2)(A).

The district court did not abuse its discretion by limiting the number of

interrogatories to 25. The court explicitly stated in its Scheduling Order that the "time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified." The order did not specify any modifications, and there is no subsequent order in the record altering the limits set by Rule 33(a), nor is there anything in the record to indicate that either party requested leave to serve additional interrogatories. Significantly, Enwonwu never explained to the court why she needed the extra interrogatories, or how she would be prejudiced by the court's ruling. Accordingly, the court's decision to limit the parties to serving no more than 25 written interrogatories was within a range of reasonable choices and was not influenced by any mistake of law.

B.      Enwonwu's Pretrial Motion to Compel Discovery and Motions for Sanctions

Enwonwu argues that the district court abused its discretion by denying her motion to compel discovery and her motion for sanctions because, among other things, the Hospital was required to supplement its Bylaws. Enwonwu claims that the court should have granted the motion for contempt and for sanctions because counsel for the Hospital "deliberately refused" to comply with the court's order,

which directed the parties to "confer and to prepare a proposed consolidated pretrial order," when counsel informed Enwonwu that the Hospital could not stipulate to the accuracy and authenticity of Enwonwu's exhibits and material facts attached to the motion for partial summary judgment. Enwonwu claims that the court failed to rule on her subsequent motion for contempt after it explicitly stated that it would rule on the motion at trial.

We review a district court's denial of a motion to compel discovery for an abuse of discretion. Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006). Our review of a district court's Rule 37 decision regarding sanctions is "sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record." Serra Chevrolet, Inc. v. General Motors Corp., 446 F.3d 1137, 1146-47 (11th Cir. 2006).

Under Federal Rule of Civil Procedure 37, "[i]f a party . . . fails to obey an order to provide or permit discovery . . ., the court in which the action is pending may make such orders in regard to the failure as are just." Fed.R.Civ.P. 37(b)(2)(A).

Initially, contrary to Enwonwu's assertion that she makes in her brief, the district court did not violate the dictates of Rule 16 by failing to enter an order after the pretrial conference, because that rule provides only that "the court should

9

issue an order reciting the action taken."[1]  Fed.R.Civ.P. 16(d) (emphasis added).

The district court did not abuse its discretion by refusing to compel the Hospital to produce an "accurate copy" of its Bylaws.  The Hospital had already produced a document that it purported was a copy of its Bylaws.  Although the court did not specifically address Enwonwu's subsequent request to produce "an accurate copy" of the Bylaws at the April 13, 2006, hearing, it did ask Enwonwu near the conclusion of the hearing if there was "anything else for today?" Enwonwu replied, "I can't think of anything."  Significantly, Enwonwu did not mention the Bylaws at all during the hearing.  Thus, the district court's decision not to compel the Hospital to produce a different copy of its Bylaws was within a range of reasonable choices and was not influenced by any mistake of law.

The district court did not abuse its discretion by failing to grant Enwonwu's motion for sanctions because counsel refused to stipulate to the accuracy and authenticity of Enwonwu's exhibits and material facts that were attached to her motion for partial summary judgment.  The court directed the parties "to confer and to prepare and file a proposed consolidated pretrial order no later than thirty (30) days from [December 19, 2006]."  The court did not order counsel for the

_____

[1] Enwonwu actually makes this argument again later in her brief.  Her subsequent argument is without merit for the same reason.

10

Hospital to stipulate to Enwonwu's documents and exhibits. Thus, sanctions were not appropriate. See Fed.R.Civ.P. 37(b)(2)(A).

Further, although it initially deferred until trial its decision on Enwonwu's outstanding motion for contempt that sought sanctions in connection with Enwonwu's being denied access to the eleventh floor to take photographs, the court ruled on the motion by the entry of a final judgment. See Chalwest (Holdings) Ltd. v. Ellis, 924 F.2d 1011, 1012 (11th Cir. 1991) (holding that appellant's request for an evidentiary hearing was denied sub silentio by the district court's order of dismissal). Enwonwu never reasserted her argument that she was unable to take photographs of the eleventh floor, and she did not attempt to introduce photographs of the eleventh floor at trial. Thus, the court did not abuse its discretion by denying the motion for contempt.

C.   Motion for Partial Summary Judgment and Motion for Leave to File a Renewed Motion for Summary Judgment

Enwonwu argues that the district court erred by denying her motion for partial summary judgment and her motion for leave to file a renewed motion for summary judgment.

District courts "enjoy broad discretion in deciding how best to manage the cases before them," Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366

11

(11th Cir. 1997), and that discretion extends to whether to consider untimely motions for summary judgment,  see Matia v. Carpet Transport, Inc., 888 F.2d 118, 119 (11th Cir. 1989).

Pursuant to Local Rule 56.1(D), "[m]otions for summary judgment shall be filed as soon as possible, but, unless otherwise ordered by the court, not later than twenty (20) days after the close of discovery, as established by the expiration of the original or extended discovery period or by written notice of all counsel, filed with the court, indicating that discovery was completed earlier."  N.D. Ga. L.R. 56.1(D).

Pursuant to Local Rule 37.1(B),

Unless otherwise ordered by the court, a motion to compel a disclosure or discovery must be filed within the time remaining prior to the close of discovery or, if longer, within ten (10) days after service of the disclosure or discovery response upon which the objection is based.  The close of discovery is established by the expiration of the original or extended discovery period or by written notice of all counsel, filed with the court, indicating that discovery was completed earlier.

N.D. Ga. L.R. 37.1(B).

As an initial matter, Enwonwu does not dispute that the discovery period ended in September 2005.  Her main contention is that the discovery period was extended by Local Rule 37.1(B) "by necessary implication," and for the limited

12

purpose of accommodating the Hospital's compliance with the court's order on the motion to compel. Enwonwu argues that discovery ended when the Hospital fully complied with the court's order on May 8, 2006, by providing her with the punch audit for Harry Dale. However, Enwonwu's argument lacks merit because Local Rule 37.1 clearly states that "[t]he close of discovery is established by the expiration of the original or extended discovery period or by written notice of all counsel, filed with the court, indicating that discovery was completed earlier." N.D. Ga. L.R. 37.1(B). There is no written notice on record that the discovery period was extended. Accordingly, Enwonwu's May 23, 2006, motion for partial summary judgment was untimely because it was filed more than 20 days after the undisputed close of discovery. In denying Enwonwu's motion for partial summary judgment, the court also noted that it could achieve greater efficiency by adjudicating the case. The court's decision to deny Enwonwu's motions, because the motions were untimely and because adjudication was more efficient, was within a range of reasonable choices and was not influenced by any mistake of law.

D.     District Court's Exclusion of Exhibits and Failure to Address the Admissibility of Enwonwu's Evidence Prior to Trial

Enwonwu argues that the district court abused its discretion by deferring

until trial a decision on the Hospital's objections to Enwonwu's evidence. Enwonwu also contends that the district court abused its discretion by failing to rule on the admission of some of her exhibits and by excluding some other exhibits.

We review evidentiary rulings for an abuse of discretion. Anderson v. WBMG-42, 253 F.3d 561, 563 (11th Cir. 2001).

Pursuant to Rule 103(a), evidentiary "[e]rror[s] may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Fed.R.Evid. 103(a). Similarly, Fed.R.Civ.P. 61 states:

> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

"The party asserting error has the burden of proving that the error prejudiced a substantial right of that party." United States v. Killough, 848 F.2d 1523, 1527 (11th Cir. 1988).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Civ.P. 801(c). "Hearsay is not admissible except as provided by

14

these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed.R.Civ.P. 802. There are several exceptions to the hearsay rule. See Fed.R.Civ.P. 803(1)-(23).

Enwonwu intended to introduce several documents relating to the other job candidates' previous employers and education, information relating to selecting information technology ("IT") employees, and more than 250 emails from employees at Enwonwu's other full-time workplace. However, those documents were hearsay, and none of the exceptions apply. Thus, the district court did not abuse its discretion by excluding those documents.

Even assuming the district court erred by excluding or failing to rule on the admissibility of some of Enwonwu's other evidence, any error is harmless because Enwonwu fails to allege how the denial of admission of any of those documents prejudiced a substantial right.

E.      Grant of Hospital's Leave to Supplement its Pretrial Order

Enwonwu argues that the district court abused its discretion and violated her due process rights by granting the hospital's motion to supplement its pretrial order.

"A district court has 'broad discretion' to construe its own pretrial orders and we afford substantial deference to a trial court's decision to allow (or

15

disallow) amendments to pretrial orders." Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1334 (11th Cir. 2005).

Enwonwu's argument is without merit. While it is true that the district court granted the Hospital's motion to supplement, the court also subsequently granted Enwonwu's two motions to supplement. Moreover, there is nothing on the record to indicate that Enwonwu opposed the Hospital's request to supplement. Thus, the court's decision to grant the parties' motions was within a range of reasonable choices and was not influenced by any mistake of law.

F.     Enwonwu's Claims Against the Other Defendants/Supplementing Complaint

Enwonwu argues that the district court erred in dismissing her personal capacity claims against Brown, Lindsey, and Garrett. Enwonwu also claims that it was error for the court to strike paragraph four of her pretrial order.

A district court's decision to grant or deny leave to amend a pleading is reviewed for abuse of discretion. Jennings v. BIC Corp., 181 F.3d 1250, 1254 (11th Cir. 1999). As mentioned above, "[a] district court has 'broad discretion' to construe its own pretrial orders." Transamerica Leasing, Inc., 430 F.3d at 1334.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction . . ., a short and plain

16

statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." Fed.R.Civ.P. 8(a). Before trial, a party may amend its pleading once as a matter of course. Fed.R.Civ.P. 15(a). "In all other cases [before trial], a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).

"Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Coon v. Georgia Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987) (citation omitted). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of vague sympathy for particular litigants." Id.

Initially, Enwonwu relies on our statement that "issues not raised in the pleadings may be treated as if they were properly raised when they are 'tried by express or implied consent of the parties,' Federal Rule of Civil Procedure 15(b), or are included in a pretrial order." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077 (11th Cir. 2003) (emphasis added) (citing Drill South, Inc. v. Int'l Fidelity Ins. Co., 234 F.3d 1232, 1239 (11th Cir. 2000) ("[W]e do not believe that the district

17

court abused its discretion in its decision to award Drill South fees despite its apparent failure to plead its entitlement to fees in its cross-claim against International Fidelity. The pre-trial order in this action clearly stated Drill South's intent to recover attorneys' fees from International Fidelity.")). In this case, however, the parties did not file a joint pretrial order, and, therefore, the Hospital did not consent to the amendment. See Fed.R.Civ.P. 15(a)(2).

The district court did not abuse its discretion by finding that Enwonwu's claims against Brown, Lindsey, and Garrett, were in their official capacities. Liberally construing Enwonwu's pro se complaint, Enwonwu explicitly states in her complaint that "[a]t all times material to this complaint [Brown, Lindsey, and Garrett] acted in their official capacities." Thus, based upon Enwonwu's complaint, the court's decision was within a range of reasonable choices and was not influenced by any mistake of law.

In addition, the district court did not abuse its discretion in striking paragraph four of Enwonwu's pretrial order. The court struck the paragraph because Enwonwu had, for the first time in the pretrial order, pled a claim of reckless endangerment, pursuant to 29 U.S.C. § 654(a)(1), Enwonwu had not pled violations of Georgia Law in her amended complaint, and the parties had agreed that jurisdiction was proper pursuant to the court's federal question jurisdiction.

18

Enwonwu could not amend her pleading again before trial without the opposing party's written consent or the court's leave. Thus, the court's decision was within a range of reasonable choices and was not influenced by any mistake of law.

G:      District Court's Failure to Rule on the Issue of Liability

Enwonwu argues that the court abused its discretion when it refused to rule on the question of liability. She claims that the "sole purpose of going through the motions of empaneling a jury was to reject Enwonwu's vital exhibits that unequivocally made out her case against [the Hospital]."

The district court did not abuse its discretion by proceeding to empanel the jury because, although Enwonwu initially requested the court to resolve the issue of liability, she ultimately decided that she wanted a jury trial and did not want to waive her right to a jury. Thus, this issue is without merit.

H.      Trial Date/Request for Continuance

Enwonwu argues that the court abused its discretion by setting a trial date of June 25, 2007, because "the decision to proceed to trial was made with the intent to place Enwonwu, a pro se litigant, at a total disadvantage by ensuring that she was denied necessary time within which to adequately prepare for trial." Enwonwu also argues that the district court denied her request for continuance "in reckless disregard for her health." Enwonwu needed the continuance in order to

19

"enable her to recover from the effect of the dust particles she had inhaled as she navigated her way through the reconstruction work then ongoing at the U.S. District Courthouse."

We review a district court's denial of a motion for trial continuance for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005); see also Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002) (stressing the broad discretion district courts have in managing their cases). "The denial of a request for a continuance does not constitute an abuse of discretion unless it 'severely prejudices' the moving party." Rink v. Cheminova, Inc., 400 F.3d 1286, 1296 (11th Cir. 2005) (brackets omitted).

We consider the following four factors in reviewing a district court's denial of a request for a continuance: "(1) the moving party's diligence in its efforts to ready its case prior to the date set for hearing; (2) the likelihood that the need for a continuance would have been remedied had the continuance been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the moving party might have suffered harm as a result of the district court's denial." Id.

Pursuant to Local Rule 16.4(A), "[a] case shall be presumed ready for trial on the first calendar after the pretrial order is filed unless another time is

20

specifically set by the court." N.D. Ga. L.R. 16.4(A).

The district court did not abuse its discretion in setting the trial date. The parties filed their initial pretrial orders in January 2007. Enwonwu filed her supplemental pretrial orders on May 14, 2007. On April 13, 2007, the court set the trial date to June 25, 2007, more than two months later. Significantly, Enwonwu never requested an extension and there is no indication that she opposed the trial date set by the court.

In addition, the district court did not abuse its discretion in denying Enwonwu's motion for a continuance. Enwonwu had been at the courthouse for at least two hours when she requested a continuance. The court specifically noted that it was concerned that "this same thing will happen tomorrow." Thus, it was unclear whether a grant of continuance would have remedied Enwonwu's condition. The court also noted that the "jurors [had] come here for jury service." Therefore, the granting of the continuance would have inconvenienced the court. Finally, the court noted that the lunch break was near, and Enwonwu could get some rest at that time. Thus, the extent to which Enwonwu might have suffered harm as a result of the court's denial was limited.

Finally, Enwonwu has not shown that either the denial of her motion for continuance or the district court's setting of a trial date severely prejudiced her.

21

Therefore, the court's decisions were within a range of reasonable choices and were not influenced by any mistake of law.

## II.

Enwonwu argues that she met her burden of proving a prima facie case on all of her claims. Thus, she claims that the burden shifted to the Hospital to adduce evidence of the legally sufficient reasons for its actions.

We review a district court's ruling on a motion under Fed.R.Civ.P. 50 de novo and apply the same standard as the district court. Nebula Glass Intern., Inc. v. Reichhold, Inc., 454 F.3d 1203, 1210 (11th Cir. 2006). However, "[i]f judgment as a matter of law was due to be granted, it matters not whether the district court got the reasons for doing so right." Collado v. United Parcel Serv., 419 F.3d 1143, 1151 (11th Cir. 2005). The evidence is viewed in the light most favorable to the non-moving party and all inferences are drawn in its favor. Russell v. N. Broward Hosp., 346 F.3d 1335, 1343 (11th Cir. 2003).

Rule 50 allows a court to take a case away from the jury and enter judgment as a matter of law ("JMOL"). Fed.R.Civ.P. 50(a). Specifically, Rule 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

22

(A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed.R.Civ.P 50(a)(1).

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "to limit, segregate, or classify his employees or applicants for employment . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); Bass v. Bd. of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1103 (11th Cir. 2001). Plaintiffs bear the burden of proving that the employer discriminated against them unlawfully. Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000). A plaintiff may establish a Title VII violation through the introduction of: (I) direct evidence of discrimination; or (ii) circumstantial evidence that creates an inference of discrimination. Id.

In reviewing Title VII claims that are supported by circumstantial evidence, we use the three-step burden-shifting framework established in McDonnell-

23

Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).  See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  If a plaintiff successfully establishes a prima facie case of discrimination, the plaintiff establishes a rebuttable presumption that the employer has discriminated against him or her.  Id.  The burden then shifts to the employer, which can rebut the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for its employment decision against the plaintiff.  Id.  If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretext for discrimination.  Id. at 1273.  The ultimate burden of proving that the employer intentionally discriminated against the plaintiff on an unlawful basis remains at all times with the plaintiff.  Id.

Discrimination claims brought pursuant to the equal protection clause, Title VII, § 1981, and the ADA, have the same requirements of proof and use the same analytical framework.  See Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981); Cross v. State of Alabama, 49 F.3d 1490, 1507-08 (11th Cir. 1995) (noting, for an equal protection claim, that "[w]hen section 1983 is used as a parallel remedy for violation of section of Title VII . . ., the

24

elements of the two causes of action are the same.") (citations omitted).

As an initial matter, Enwonwu claimed in her EEOC charge that she had been discriminated against by the Hospital only on account of her disability. Enwonwu argues in her amended reply brief that the Hospital conceded that she is black and of Nigerian origin, therefore, "that rendered mute the fact that the EEOC complaint did not specify this undisputed fact." However, Enwonwu's Title VII charges based on race and national origin were appropriately barred because those charges could not "reasonably be expected to grow out of the EEOC disability charge. See Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir.1994) (the plaintiff's judicial complaint is limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination").

A.    Enwonwu's Disparate Treatment Claims

To establish a prima facie case of disparate treatment, a plaintiff must show that (1) she is a member of a group protected by Title VII, (2) she was qualified for the position or benefit sought, (3) she suffered an adverse effect on her employment, and (4) she suffered from a differential application of work or disciplinary rules. Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999). An adverse employment action must effect "a serious and material change

25

in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1239 (11th Cir. 2001). Further, regardless of the employee's subjective view, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id. Notably, a transfer can constitute an adverse employment action for Title VII purposes, but only if it involves a reduction in pay, prestige or responsibility. See Hinson, 231 F.3d at 829.

The district court did not err by granting the Hospital's motion for JMOL on Enwonwu's disparate treatment claims. By her own admissions, all Help Desk employees were required to work in the Data Center; thus, Enwonwu has not shown that she suffered from a differential application of work or disciplinary rules. To the extent that Enwonwu claims that the policy to work in the Data Center was, nonetheless, applied disparately, she has failed to show that she suffered any adverse employment because Enwonwu has not established that (1) the policy is "a serious and material change in the terms, conditions, or privileges of employment"; and (2) that the "transfer" to the Data Center involved a reduction in pay, prestige or responsibility. Further, Enwonwu admitted that the Hospital's sick leave policy applied to all employees, and, therefore, she cannot show that she suffered from a differential application of work or disciplinary rules

26

with respect to that claim. Enwonwu also has failed to show, nor is there any evidence in the record, that the Hospital treated her differently than other night shift employees with respect to its requirements for training.

B.      Enwonwu's Refusal to Hire and Discharge Claim

In her reply brief, Enwonwu argues that she established that she belonged to a protected class based upon her race and national origin, and the Hospital did not prove that the other employees who were given Dale's hours for the daytime weekend shift belonged to her protected class. According to Enwonwu, her request to be transferred to the daytime shift met the requirement of applying for a vacant position, even though the Hospital never posted a job vacancy, and because the Hospital distributed Dale's hours to existing full time employees, the position remained vacant.

In general, to establish a prima facie case of refusal to hire, a plaintiff must show that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for and applied for a job for which the employer was seeking applicants; (3) [s]he was rejected in spite of her qualifications; and (4) after her rejection, the position remained open or was filled by a person outside Enwonwu's protected class. See Joe's Stone Crabs, 296 F.3d at 1273. Where the plaintiff alleges discriminatory discharge, she can establish a prima facie case of discrimination by showing that

27

she: (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class. Cuddeback v. Florida Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004).

Enwonwu failed to establish a prima facie case discrimination based upon her race or national origin with respect to her claim that the Hospital intentionally deprived her of Dale's daytime Help Desk position. By her own admissions, the Hospital distributed the hours that Dale had worked to other employees, and, therefore, Enwonwu failed to show that "[s]he was qualified for and applied for a job for which the employer was seeking applicants." See Joe's Stone Crabs, 296 F.3d at 1273. Enwonwu's claim that her request to be transferred to the daytime shift met the requirement of applying for a vacant position, even though the Hospital never posted a job vacancy, is without merit.

Enwonwu failed to establish a prima facie case of refusal to hire based upon her race, national origin, or disability with respect to the newly-created 40-hour night shift Help Desk position. Enwonwu applied for and was interviewed for the position. However, according to the trial evidence, Enwonwu scored lower than two other job candidates on her applicant evaluation form. Moreover, according to her resume, Helen White, a black female whom the Hospital selected for the

position, had 17 years' experience in the healthcare industry and 12 years' of information systems experience. Notably, 9 of White's 12 years' of information systems experience was as the Hospital's Help Desk Coordinator. Thus, the district court did not err by finding that Enwonwu failed to show that the Hospital rejected her for the position in spite of her qualifications and that the Hospital had legitimate, nondiscriminatory reasons for its employment decision.

Enwonwu also failed to establish a prima facie case of discharge based upon her race, national origin, and disability. According to the trial evidence, the Hospital eliminated Enwonwu's part-time weekend-night position, but told Enwonwu that she was eligible to apply for any position at the Hospital for which she was interested. Thus, because the position was eliminated altogether, Enwonwu failed to show that she was replaced by someone outside the protected class.

C.     Enwonwu's Hostile Work Environment Claim

A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

29

We have "repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider, inter alia, (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. Id. at 1276. It is repeated incidents of verbal harassment that continue despite the employee's objections that are indicative of a hostile work environment, and not simply some "magic number" of racial or ethnic insults. Id. Nevertheless, harassment need not be shown to be so extreme that it produces tangible effects on job performance in order to be actionable. Harris, 510 U.S. at 22, 114 S.Ct. at 371.

30

Enwonwu failed to establish a prima facie case of hostile work environment based upon her race and national origin. Enwonwu admitted that Lindsey did not make any comments about her race or national origin. Thus, she has not shown that the alleged harassment by Lindsey was based on a protected characteristic. Enwonwu claimed that Garrett made a statement about her race and national origin when Garrett told Enwonwu that "people not like [Enwonwu], have tried [to complain] but that the point is you have to do what Tom Lindsey says." However, even if Garrett's single, isolated statement was based upon a protected characteristic, Enwonwu has not shown that the statement was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." See Miller, 277 F.3d at 1275-76.

D.    Enwonwu's ADA Claim

To prove a prima facie employment-discrimination case under the ADA, the employee must show that (1) she has a disability; (2) she is a qualified individual for the position in question, and (3) the employer discriminated against her because of his disability. See 42 U.S.C. § 12112; Waddell v. Valley Forge Dental Assocs. Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

The ADA and the regulations interpreting the Rehabilitation Act both define "disability" as (1) a physical or mental impairment that substantially limits one or

31

more of the major life activities of the individual; (2) a record of such an

impairment; or (3) being regarded as having an impairment.

42 U.S.C. § 12102(2); 34 C.F.R. § 104.3(j)(1); Cash v. Smith, 231 F.3d 1301,

1305 (11th Cir. 2000) (holding that an employee failed to show that her seizures,

diabetes, migraines, and depression constituted a "disability"). The determination

whether an individual is disabled for ADA purposes is to be made with reference

to measures that mitigate impairment. Sutton v. United Air Lines, Inc., 527 U.S.

471, 475, 119 S.Ct. 2139, 2143, 144 L.Ed.2d 450 (1999).

A "physical or mental impairment" is any physiological disorder or

condition affecting one or more body systems, or any mental or psychological

disorder. 29 C.F.R. § 1630.2(h)(1),(2). A "major life activity" may include

working. See 29 C.F.R. § 1630.2(I). For a condition to limit a person's ability to

work substantially, it must significantly restrict a person's ability to perform either

a class of jobs or a broad range of jobs in various classes as compared with the

average person having comparable training, skills, and abilities. 29 C.F.R.

§ 1630.2(j)(3)(I). The inability to perform a single, particular job does not

constitute a substantial limitation in the major life activity of working. 29 C.F.R.

§ 1630.2(j)(3)(I); Hillburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1227

(11th Cir. 1999). It is insufficient for individuals attempting to prove disability

32

status under this test to merely submit evidence of a medical diagnosis of an impairment; rather, the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 691-92, 151 L.Ed.2d 615 (2002). The existence of a disability is to be determined on a case-by-case basis. Id.

The district court did not err by granting the Hospital's motion for JMOL on Enwonwu's ADA claim. Enwonwu stated that she suffers from sarcoidosis and that her sarcoidosis "flared up" when she worked in the cold environment in the Data Center. As a result, Enwonwu suffered arthritis-like symptoms, including swelling of her joints, and difficulty breathing. However, Enwonwu testified at trial that she was able to care for herself, to walk, to read, to speak, and to understand. Significantly, Enwonwu was able to maintain another, full-time job during the week, and she also admitted that she was able to perform her duties at the Help Desk. In light of the unrestricted abilities she testified to concerning her ability to perform her work duties, Enwonwu failed to demonstrate that her sarcoidosis condition substantially limited her ability to work. Thus, Enwonwu failed to demonstrate that she has a disability within the meaning of the ADA.

In light of the foregoing, we find no error in the district court's grant of the

33

Hospital's motion for JMOL, and we find that the district court did not abuse its discretion in denying Enwonwu's pretrial motions.  Accordingly, the decision of the district court is

**AFFIRMED.**